**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

MICHELLE CRAWFORD,

Plaintiff,

v. Case No. 8:26-cv-120-TPB-NHA

LAKELAND REGIONAL HEALTH
SYSTEMS, INC., et al.

Defendants.
_________________________________/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' "MOTION TO DISMISS AMENDED COMPLAINT WITH PREJUDICE"**

This matter is before the Court on Defendants' "Motion to Dismiss Amended Complaint with Prejudice," filed on July 27, 2026. (Doc. 33). On July 30, 2026, Plaintiff Michelle Crawford filed a response in opposition. (Doc. 34). After reviewing the motion, response, court file, and the record, the Court finds as follows:

**Background**

Plaintiff Michelle Crawford worked within the Lakeland Regional Health system from 2012 until January 2, 2026, when her employment was terminated in a letter citing "leave exhaustion." Plaintiff alleges that the Lakeland Regional Health system is operated or governed by Defendant Lakeland Regional Health Systems, Inc. d/b/a Lakeland Regional Health. Plaintiff primarily worked at the main hospital facility operated by Defendant Lakeland Regional Medical Center, Inc., and Lakeland Regional Medical Center, Inc. is identified on Plaintiff's W-2 form as her employer. Plaintiff alleges that both Lakeland Regional Health Systems, Inc. and Lakeland

Regional Medical Center, Inc. were her joint employers and collectively refers to them as “Lakeland Regional Health.” Defendant Scott Dimick is the senior vice president and chief human resources officer of Lakeland Regional Health, and he exercised supervisory authority over Plaintiff.

From 2012 until 2022, Plaintiff worked as a project manager in Lakeland Regional Health’s information technology division. During her employment, Plaintiff received strong performance ratings, and in 2022, she was recruited into the role of manager of employee health and wellness where she developed and led wellness programming for Lakeland Regional Health. In this role, Plaintiff oversaw employee health services, workers’ compensation, and team member wellness programming.

Sometime in March 2024, Lakeland Regional Health directed Plaintiff to adopt the Harvard Healthy Eating Plate (“HHEP”) as the “foundation” for nutritional programming.[1] Plaintiff claims that she did not refuse to teach or include the HHEP, but she explained that, “in her professional judgment . . . the program should be structured around the evidence-based principle of calorie density for weight management, while the HHEP and other recognized nutrition frameworks could be presented as resources supporting informed, client-directed choices.” Plaintiff alleges that she holds longstanding and sincerely-held religious beliefs grounded in “Ahimsa” (Sanskirt for non-harming and compassion) and “Satya” (Sanskirt truthfulness and respect for individual moral agency). She asserts that presenting the HHEP truthfully

[1] The Harvard Healthy Eating Plate, created by created by the Harvard School of Public Health, presents nutrition guidance through the visual image of a plate of food divided into sections for fruits and vegetables (one half), whole grains (one fourth), and healthy protein (one half), accompanied by guidance on fats, oils, and beverages.

as one evidence-based option was consistent with those beliefs, but affirmatively endorsing certain recommendations within it, presenting it as exclusively authoritative, and suppressing other recognized evidence-based approaches would not. Plaintiff requested accommodations and suggested proposed alternatives that would be consistent with her professional, ethical, and religious beliefs, but Dimmick framed Plaintiff's objections to the HHEP as a refusal to do her job and reiterated that Plaintiff must adopt the HHEP framework. Plaintiff and Dimmick appear to have fought over the programming for around a year before Plaintiff applied for intermittent leave under the Family Medical Leave Act ("FMLA"), which was approved on March 3, 2025.

Plaintiff did not refuse to teach the HHEP. Rather, she requested permission to continue presenting the HHEP alongside other evidence-based approaches, but Dimmick continued to deny those requests. On March 17, 2025, Dimmick issued a formal response to Plaintiff's accommodation request, which granted limited physical exemptions (such as not requiring Plaintiff to personally handle certain foods) but denied Plaintiff's core request that she not teach the HHEP exclusively. Dimmick's response directed Plaintiff to teach exclusively using the HHEP and to do so without introducing any unapproved messaging.

In March 2025, Plaintiff sought medical care, allegedly due to worsening symptoms associated with severe workplace stress, including anxiety, significant weight loss, insomnia, and worsening facial nerve pain. Plaintiff requested as a workplace accommodation that communications with Dimmick occur in writing rather than on video or in-person "to protect her health and ensure clarity." On March 25,

2025, Dimmick rejected the request and scheduled a video meeting for March 27, 2025. Instead of attending the meeting, Plaintiff used pre-approved intermittent FMLA leave for a medical treatment session. During the treatment window, Plaintiff received texts, calls, and emails from the leave coordinator.

Plaintiff requested an in-person meeting with Dimmick to discuss her mental health, treatment, and protected leave. Plaintiff attempted to limit the meeting to those topics and asked that any discussion of accommodation requests or disciplinary issues be handled separately and in writing, but Dimmick did not agree. Plaintiff provided notice that she might need to leave if the meeting became adversarial.

At the April 1st meeting, Plaintiff became distressed. When she attempted to leave the meeting, Dimmick warned her that doing so would be treated as insubordination and subject her to discipline. During the meeting Dimmick presented Plaintiff with a memorandum stating that she was required to exclusively teach the HHEP, which was identified as Lakeland Regional Health's chosen framework. The memorandum directed her to acknowledge compliance in writing by 5:00 pm that day, with a warning that failure to comply would result in written counseling. Following the meeting, Plaintiff sought medical care and was placed on continuous leave.

Also on April 1, 2025, Plaintiff was informed that Lakeland Regional Health was launching an investigation into her complaints regarding Dimmick. On April 22, 2025, Plaintiff participated in a verbal interview lasting approximately two hours while she was on continuous FMLA leave. On June 17, 2025, Plaintiff received a letter from John Hoppe, Lakeland Regional Health's Chief Legal Officer, stating that

after the investigation conducted by outside counsel, he found no violations by Dimmick of any laws, regulations, or policies.

In a separate communication addressing Plaintiff's accommodation request and return-to-work conditions, Hoppe reaffirmed that Plaintiff could return to her position only if she agreed to teach the HHEP exclusively without other unapproved messaging, or she could resign or seek another position within Lakeland Regional Health.

On September 29, 2025, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Lakeland Regional Health. The charge alleged religious discrimination, disability discrimination, failure to accommodate, hostile work environment, and retaliation under Title VII and the Americans with Disabilities Act ("ADA"). On November 17, 2025, the EEOC issued a notice of right to sue letter. A few days later, Defendants' counsel mailed a 38-page position statement to Plaintiff while she remained on leave; she believes the position statement was intended to intimidate and destabilize her.

Lakeland Regional Health approved two three-month ADA leave extensions, with the second extending Plaintiff's leave through January 1, 2026. On December 11, 2025, Plaintiff submitted a written request for extension of leave through April 1, 2026, as a reasonable accommodation under the ADA. Defendants did not respond in the next few weeks. On January 2, 2026, Dimmick issued a notice terminating Plaintiff's employment. The letter cited exhaustion of leave and stated that Plaintiff was ineligible for any additional leave of absence.

On January 15, 2026, Plaintiff filed the instant lawsuit, asserting 19 claims for, among other things, religious discrimination, disability discrimination, failure to accommodate, retaliation, interference, and more. The Court dismissed Plaintiff's complaint as a shotgun pleading and identified some, but not all, facial defects. On July 17, 2026, Plaintiff filed an amended complaint asserting claims for: (1) religious disparate treatment under Title VII; (2) failure to accommodate religious beliefs under Title VII; (3) retaliation under Title VII; (4) disability discrimination under the ADA; (5) failure to provide reasonable accommodations under the ADA; (6) retaliation under the ADA; (7) FMLA interference; (8) FMLA retaliation; (9) hostile work environment under Title VII based on religion; (10) defamation under Florida law; (11) negligent hiring, retention, and supervision; (12) religious disparate treatment under the Florida Civil Rights Act ("FCRA"); (13) failure to accommodate religion under the FCRA; and (14) retaliation under the FCRA. Defendants have moved to dismiss the amended complaint.

## Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 570.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995). Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009) (Lazzara, J.).

As Plaintiff in this case is proceeding *pro se*, the Court more liberally construes the pleadings. *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2018). However, a *pro se* plaintiff must still conform with procedural rules and the Court does not have "license to act as *de facto* counsel" on behalf of a *pro se* plaintiff. *United States v. Padgett*, 917 F.3d 1312, 1317 (11th Cir. 2019).

## <u>**Analysis**</u>

### ***Shotgun Pleading***

Defendants contend that the amended complaint, overall, remains a shotgun pleading because it continues to be padded with lengthy and unnecessary allegations and meritless claims. A shotgun pleading is one where "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief" and the defendant therefore cannot be "expected to frame a responsive pleading." *See Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. College*, 77 F.3d 364, 366 (11th

Cir. 1996). The Eleventh Circuit has identified four primary types of shotgun pleadings:

> (1) complaints containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint;
>
> (2) complaints that do not commit the mortal sin of re-alleging all preceding counts but are guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;
>
> (3) complaints that commit the sin of not separating into a different count each cause of action or claim for relief; and
>
> (4) complaints that assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which actions or omissions, or which of the defendants the claim is brought against.

*See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322-23 (11th Cir. 2015).

Plaintiff's 50-page amended complaint is a significant improvement over her former 171-page complaint.[2] That being said, the Court finds one particular shotgun issue reamains as to Count XI, which improperly combines claims for negligent hiring, negligent supervision, and negligent retention, as discussed below. Otherwise, the Court believes that the amended complaint does not constitute a shotgun pleading and that Defendants may adequately frame a response to the complaint.

---

[2] Including the attached exhibits and civil cover sheet, the original complaint totaled 254 pages.

***Title VII and Florida Civil Rights Act Claims (Counts I, II, III, IX, XII, XIII, XIV)***

Plaintiff asserts claims under Title VII for religious disparate treatment (Count I), failure to accommodate religious beliefs (Count II), retaliation (Count III), and hostile work environment based on religion (Count IX). She asserts corresponding claims under the FCRA in Counts XII through XIV. Claims brought under the FCRA are analyzed under the same framework as Title VII claims. *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010). Defendants seek dismissal of these claims, arguing that (1) Plaintiff had no right to use her position to promote alternative dietary plans, (2) she has not alleged an adverse employment action based on her religion or request for accommodation, and (3) she has not alleged sufficiently severe or pervasive conduct to support a hostile work environment claim.

Plaintiff's Request to Teach Alternative Dietary Models

Defendants argue that they selected the HHEP as the exclusive dietary model, and that Plaintiff had no Title VII right to dictate Defendants' institutional messaging. They appear to contend that allowing her to teach alternative dietary models would amount to allowing her to impose her religious or personal views through her position, or would otherwise interfere with Defendants' ability to control the health information communicated to their employees and would thereby impose some undue hardship upon Defendants.

Defendants' arguments may ultimately prove persuasive, but the issues presented cannot be resolved at this early stage of the proceedings. Plaintiff alleges that she requested permission to present the HHEP alongside other evidence-based

dietary approaches consistent with her sincerely held religious beliefs. Defendants dispute the nature and reasonableness of that request and contend that permitting Plaintiff to present alternative dietary models would interfere with Defendants' ability to control the health information communicated to its employees. Resolution of these issues requires consideration of the nature of Plaintiff's position, the content and scope of her requested accommodation, and the practical effect of the accommodation on Defendants' operations. On the present record, the Court cannot conclude as a matter of law that Plaintiff's requested accommodation would impose an undue hardship on Defendants or was otherwise unreasonable. The motion is denied as to this ground.

Adverse Employment Actions

Defendants next argue that Plaintiff's Title VII and FCRA claims fail because she has not alleged an adverse employment action based on her religion or request for religious accommodation. Specifically, Defendants argue that Plaintiff was never disciplined, that the possibility of future discipline does not constitute an adverse employment action, that Defendants' suggestion that Plaintiff seek another position was part of the accommodation process, and that communications with Plaintiff while she was on leave were not adverse. Because the nature of the required adverse action differs depending on the specific claim, the Court addresses these claims separately.

*Religious Disparate Treatment – Counts I and XII*

To state a disparate treatment claim under a traditional theory, a plaintiff must show that "(1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees more favorably; and (4) she was qualified to do the job." *Schmidt v. Disney Parks,*

*Experiences, and Prods., Inc.*, 721 F. Supp. 3d 1314, 1324 (M.D. Fla. Feb. 29, 2024) (quoting *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000)). Although a plaintiff need not show that the challenged employment action caused a significant, serious, or substantial disadvantage, she must show "some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis*, *Mo.*, 601 U.S. 346, 355 (2024).

The Court agrees that Plaintiff has not sufficiently alleged an adverse employment action for purposes of her disparate-treatment claims. Plaintiff alleges that Lakeland Regional Health removed a credential associated with her position from department policy, suspended the Healthy Lifestyle Coaching Program, restricted her responsibilities, threatened discipline, informed her that she must comply with the HHEP-exclusive directive or seek another position, and later conditioned her return to her existing position on compliance with that directive. But Plaintiff does not allege facts showing how removal of the credential from department policy, suspension of the program, or the unspecified restriction of her responsibilities caused her harm with respect to an identifiable term or condition of her employment. Nor does Plaintiff allege facts showing that the threatened discipline, which was never imposed, caused harm with respect to an identifiable term or condition of her employment. Accordingly, Counts I and XII are dismissed. In an abundance of caution, the Court will grant leave to amend, if Plaintiff may do so in good faith.

*Failure to Accommodate Religious Beliefs (Counts II and XIII)*

Defendants' adverse-action argument does not warrant dismissal of Plaintiff's failure-to-accommodate claims. To establish a *prima facie* case based on an employer's

failure to reasonably accommodate a religious belief, a plaintiff must show that "(1) [her] sincere and bona fide religious belief conflicted with an employment requirement, and (2) [her] employer took adverse employment action against [her] because of [her] inability to comply with the employment requirement or because of the employer's perceived need for [her] reasonable accommodation." *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1275 (11th Cir. 2021); *see also Dixon v. The Hallmark Cos., Inc.*, 627 F.3d 849, 855 (11th Cir. 2010).

Plaintiff alleges that she notified Lakeland Regional Health of the conflict between her religious beliefs and the HHEP-exclusive requirement and requested an accommodation permitting her to present alternative dietary models. She further alleges that Lakeland Regional Health denied that accommodation and later conditioned her return to her position on compliance with the HHEP-exclusive requirement that conflicted with her religious beliefs. These allegations are sufficient at the pleading stage to allege adverse action because of Plaintiff's inability to comply with the employment requirement or Lakeland Regional Health's perceived need for accommodation. Accordingly, the motion is denied as to Counts II and XIII on this ground.

*Retaliation (Counts III and XIV)*

The adverse action element of a retaliation claim requires more than the corresponding element of a disparate treatment claim. A plaintiff must allege that the employer took a retaliatory action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*

*& Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation and citation omitted).

Defendants correctly note that the denial of an accommodation cannot itself serve as the retaliatory action where the accommodation request constitutes the protected activity. But Plaintiff does not rely solely on denial of her accommodation request. She alleges that Lakeland Regional Health subsequently terminated her employment because of her protected activity. Termination plainly constitutes a materially adverse action. Consequently, the motion to dismiss is denied as to this ground.

<u>Hostile Work Environment (Count IX)</u>

Defendants additionally argue that Plaintiff fails to sufficiently allege a hostile work environment claim in Count IX because the facts alleged are not sufficiently severe or pervasive to satisfy the requisite standard. The case cited by Defendants addresses hostile work environment in the context of sexual harassment, but the same general standard applies to a hostile work environment claim based on religion. Plaintiff must show (1) that she belongs to a protected group; (2) that she has been subject to unwelcome harassment; (3) the harassment was based on her membership in a protected group; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create an abusive working environment, and (5) a basis for holding the employer liable exists. *See Jones v. United Space All., L.L.C.*, 170 F. App'x 52, 55 (11th Cir. 2006); *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

The fourth element contains both a subjective and objective component. *Jones*, 170 F. App'x at 55. In evaluating the objective severity of the harassment, a court considers, among other factors, "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* Importantly, "[t]he Supreme Court has noted that 'teasing, offhand comments, and isolated incidents' do not constitute discriminatory changes in the terms and conditions of employment." *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Between her complaint and amended complaint, Plaintiff has alleged numerous facts, but those facts do not demonstrate harassment sufficiently severe or pervasive to alter the terms and conditions of her employment or create a discriminatorily abusive working environment. Plaintiff alleges, among other things, that Dimmick characterized her beliefs as a personal "Vegan Diet" or "Vegan philosophy" and questioned the sincerity and consistency of her beliefs. Even considered collectively, however, the alleged comments and conduct were not physically threatening or humiliating, were not alleged to have occurred with sufficient frequency, and do not plausibly demonstrate the type of interference with Plaintiff's work necessary to establish an objectively hostile work environment. The allegations therefore do not satisfy the severe or pervasive standard. Given the extensive factual allegations already pleaded concerning the parties' interactions, further amendment would be futile. Consequently, the motion is granted as to this ground, and Count IX is dismissed with prejudice, without leave to amend.

***ADA Claims (Counts IV, V, and VI)***

Plaintiff asserts claims for disability discrimination (Count IV), failure to provide reasonable accommodations (Count V), and retaliation for exercising rights under the ADA (Count VI). Defendants seek dismissal of these claims, arguing that (1) Plaintiff does not allege facts to show that she suffered an adverse employment action because of a disability, (2) she is not entitled to year-long leave as an ADA accommodation, and (3) her claims go beyond the scope of her EEOC charge.

Adverse Employment Actions

Defendants first argue that Plaintiff has not alleged an adverse employment action sufficient to support a disability discrimination claim. Specifically, Defendants contend that Plaintiff "has not alleged any adverse employment decision before she was terminated when she was unable to return to work after exhausting all leave," and that there is therefore "no basis for a claim of disability discrimination."

The Court disagrees. Plaintiff alleges that her impairments substantially limited several major life activities, and that Defendants knew of those impairments and limitations. Plaintiff expressly alleges that Defendants terminated her employment on January 2, 2026. Count IV incorporates the allegations concerning Plaintiff's December 2025 request for additional disability-related leave and her subsequent termination. Termination constitutes an adverse employment action.

Defendants emphasize that Plaintiff was terminated when she remained unable or unwilling to return to work after exhausting her previously approved leave. Indeed, the separation notice states that Plaintiff was ineligible for additional leave under applicable law or company policy, and that her employment was terminated because

no leave status remained available for her continued absence. But those circumstances concern the reason for the termination and, potentially, whether Plaintiff was a qualified individual who could perform the essential functions of her position with or without reasonable accommodation. They do not establish that Plaintiff suffered no adverse employment action. Because Defendants do not otherwise develop an argument concerning causation or Plaintiff's qualifications under Count IV, the Court declines to address those issues *sua sponte*. The motion is denied as to this ground.

Length of Leave

Defendants argue that the ADA did not require them to provide what they characterize as approximately one year of continuous leave. They note that Plaintiff had been absent since April 1, 2025, had received two three-month extensions of leave, and in December 2025 requested an additional three-month extension through April 1, 2026. Defendants cite authority rejecting extended periods of additional leave and contend that they were not required to leave Plaintiff's position essentially vacant for a full year.

There is no brightline rule though establishing the maximum duration of leave that may constitute a reasonable accommodation. And whether a particular accommodation would impose an undue hardship requires consideration of several factors, including the nature and cost of the accommodation, the type of operation of the employer, and the composition, structure, and functions of its workforce. *See* 42 U.S.C. § 12111(10)(B); *Davis v. Columbus Consol. Gov't*, 826 F. App'x 890, 893 (11th Cir. 2020); *Winnie v. Infectious Disease Assocs., P.A.*, 750 F. App'x 954, 962 (11th Cir.

2018). Consequently, Defendants' argument concerning the reasonableness of the additional leave requested by Plaintiff is better suited for resolution on a more developed factual record.

In any event, even assuming that Defendants are correct that the December 2025 leave request did not seek an accommodation that was reasonable, that argument does not warrant dismissal of Count V in its entirety. Count V is not based solely on the requested extension of leave. Plaintiff also alleges that, during an acute exacerbation of her conditions, she requested that certain communications and meetings occur in writing because prolonged speaking and high-stress live interactions aggravated her symptoms and impaired her ability to communicate and process information. She further alleges that Defendants denied that request, insisted on a live meeting, and threatened written counseling if she did not attend in the required format. Plaintiff separately alleges that, while on continuous medical leave, she requested that she be allowed to provide evidence and respond to questions during an internal investigation in writing, but Defendants required her to participate in an approximately two-hour verbal interview. Defendants do not address the reasonableness of either of these alleged accommodations.

Moreover, with respect to the December 2025 request itself, Plaintiff alleges that she sought a finite three-month extension through April 1, 2026, supported the request with medical documentation, and believed that continued treatment could permit her to resume the essential functions of her position. She further alleges that Defendants did not seek clarification, discuss a shorter extension or alternative accommodation, or otherwise conduct an individualized assessment before terminating

her employment. Given these allegations and the fact-intensive inquiry required to determine the reasonableness of the requested accommodation and any resulting undue hardship, the Court cannot conclude at this stage that the requested extension could not constitute a reasonable accommodation.

Accordingly, Defendants' argument concerning the duration of Plaintiff's requested leave does not warrant dismissal of Count V.

Exhaustion

Defendants argue that Plaintiff's ADA claims exceed the scope of her EEOC charge. According to Defendants, the only disability-related allegation in the charge was that Defendants failed "to engage in an interactive process to provide a safe return-to-work plan." Defendants therefore contend that, "[t]o the extent" Plaintiff's ADA claims extend beyond that issue, they are administratively unexhausted.

A plaintiff's judicial complaint is generally limited by the scope of the EEOC investigation that could "reasonably be expected to grow out of the charge of discrimination." *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004). But courts are "extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII]," and the scope of an EEOC charge should not be strictly construed. *Id.* (citation omitted). While alleging new acts of discrimination is generally not appropriate, allegations in a judicial complaint are permitted if they "amplify, clarify, or more clearly focus" the allegations in the EEOC charge. *Id.* at 1279-80 (quoting *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989)).

Defendants have not sufficiently developed their exhaustion argument to warrant dismissal of any particular ADA claim. Plaintiff asserts three distinct ADA

claims and relies on multiple alleged acts and requests for accommodation. But Defendants do not identify which of Counts IV through VI they contend are unexhausted, which particular theories within those counts exceeds the permissible scope of the EEOC charge, or why any particular claim could not reasonably be expected to grow out of the administrative investigation. Instead, Defendants assert only that Plaintiff's claims are unexhausted "[t]o the extent" they extend beyond the return-to-work issue identified in the charge. Accordingly, Defendants have not established that dismissal of Counts IV, V, or VI is warranted for failure to exhaust administrative remedies. The motion is denied as to this ground.

***FMLA Claims (Counts VII and VIII)***

"[T]he FMLA creates two types of claims: interference claims, in which an employee asserts that [her] employer denied or otherwise interfered with [her] substantive rights under the Act . . . and retaliation claims, in which an employee asserts that [her] employer discriminated against [her] because [she] engaged in activity protected by the Act." *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001) (internal citations omitted). Plaintiff asserts claims for FMLA interference (Count VII) and retaliation (Count VIII). Defendants argue that both claims fail because the communications and meetings that occurred while Plaintiff was on leave did not interfere with her exercise of FMLA rights or constitute retaliation. Defendants emphasize that employers may communicate with employees during FMLA leave for legitimate purposes and that Plaintiff herself requested at least some of the communications at issue. The Court addresses each claim separately.

FMLA Interference (Count VII)

The FMLA prohibits an employer from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise" rights provided by the FMLA. 29 U.S.C. § 2615(a)(1). To state an interference claim, a plaintiff must allege that "(1) she was eligible for FMLA benefits; (2) her employer denied her those benefits; and (3) she must 'demonstrate harm, or prejudice, resulting from the employer's interference with her exercise (or attempted exercise) of an FMLA benefit.'" *De Bello v. Alutiiq, LLC*, No. 8:22-cv-2903-WFJ-JSS, 2023 WL 5042951, at *4 (M.D. Fla. Aug. 8, 2023) (Jung, J.) (quoting *Graves v. Brandstar, Inc.*, 67 F.4th 1117, 1121 (11th Cir. 2023)).

The Court agrees with Defendants that an employer does not interfere with an employee's FMLA rights merely by communicating with the employee during a period of protected leave. Plaintiff's allegations that Defendants contacted her concerning her status or return to work, without more, therefore do not plausibly allege interference. Nor does the fact that Defendants participated in a meeting requested by Plaintiff support such a claim.

But Count VII is not based solely on those allegations. Plaintiff alleges that Defendants approved intermittent FMLA leave in March 2025, that she used that leave on March 26th and 27th, and that she reminded Dimmick on April 1st that she had used approved FMLA leave, remained under treatment, and might require continuous leave. She further alleges that, when she became acutely distressed during the April 1st meeting and attempted to stop working and leave because of her qualifying condition, Dimmick told her that leaving would constitute insubordination

and threatened discipline if she did so. Plaintiff alleges that she consequently remained at work rather than leaving.

Accepting these allegations as true, Plaintiff has plausibly alleged that Defendants restrained or interfered with her attempted exercise of FMLA rights. Plaintiff does not need to plead or establish any adverse action that was caused by taking FMLA leave, nor does she need to plead or establish any discriminatory motive or animus. *See Spakes v. Broward Cty. Sheriff's Office*, 631 F.3d 1307, 1309 (11th Cir. 2011) (noting that causal nexus is not an element of an FMLA interference claim); *Strickland*, 239 F.3d at 1207 (explaining that interference claim does not place the "increased burden" on the plaintiff to show the employer was "motivated by an impermissible retaliatory or discriminatory animus"); *De Bello*, 2023 WL 5042951, at *4. Rather, Plaintiff needs only to plausibly allege that Defendants interfered with or restrained the exercise or attempted exercise of an FMLA right, and that she suffered resulting prejudice. At this stage, Plaintiff's allegations are sufficient. Accordingly, the motion is denied as to Count VII.

<u>FMLA Retaliation (Count VIII)</u>

To state an FMLA retaliation claim, Plaintiff must plausibly allege that she engaged in statutorily protected activity, that she suffered a materially adverse action, and that the adverse action was causally related to the protected activity. *See Strickland*, 239 F.3d at 1207. Unlike an interference claim, an FMLA retaliation claim requires proof that the employer intentionally discriminated against the employee because she exercised an FMLA right. *See id.*

Plaintiff alleges that she engaged in protected activity by requesting and using intermittent and continuous FMLA leave. She alleges that, shortly after reminding Dimmick of her FMLA leave on April 1st, Dimmick threatened discipline if she left the workplace and required her to acknowledge in writing that she would comply with Lakeland Regional Health's directive concerning the HHEP dietary model. Plaintiff further alleges that Defendants later conditioned her return to her existing position on acceptance of the HHEP requirement.

These allegations do not sufficiently identify a materially adverse action taken in retaliation for Plaintiff's exercise of FMLA rights. Plaintiff does not allege that the threatened discipline was ever imposed. And the requirement that Plaintiff acknowledge and comply with the HHEP directive does not itself constitute a materially adverse action merely because Defendants required acknowledgment on the same day Plaintiff invoked her FMLA rights. As alleged elsewhere in the amended complaint, the HHEP directive arose from the parties' preexisting dispute concerning the requirements of Plaintiff's position and her requested religious accommodation. Similarly, Plaintiff's allegation that Lakeland Regional Health later conditioned her return to the same position on compliance with the HHEP directive does not plausibly allege a materially adverse action taken because Plaintiff exercised FMLA rights.

Nor do Plaintiff's allegations concerning communications during her leave cure this deficiency. As discussed above, reasonable communications concerning an employee's status or anticipated return to work do not, without more, constitute an adverse action.

Accordingly, Count VIII is dismissed. Because the Court's prior dismissal of Plaintiff's complaint was based principally on shotgun-pleading deficiencies and Plaintiff has not previously been afforded an opportunity to cure the specific deficiencies identified here, the dismissal is without prejudice. Plaintiff may amend Count VIII if she can, in good faith, allege facts sufficient to state a claim for FMLA retaliation.

***State Law Claims (Counts X and XI)***

Defendants argue that the Court should decline to exercise supplemental jurisdiction over the state law claims in Counts X and XI if it dismisses the federal claims. The Court would be inclined to do so, if the federal claims were dismissed in their entirety. Because dismissal of all federal claims is not warranted at this time, however, this argument is premature.

Defamation (Count X)

Plaintiff asserts a defamation claim against Defendants based on statements contained in a memorandum dated February 17, 2025. The memorandum referenced allegations from a prior employee complaint concerning Plaintiff's wellness teachings. Plaintiff alleges that the memorandum falsely conveyed an assertion that she promoted dangerous medical misinformation and lacked the competence, judgment, and integrity required for her position.

To state a claim for defamation under Florida law, a plaintiff must allege, among other things, publication of a false and defamatory statement to a third party. *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). Defendants argue that Plaintiff fails to sufficiently allege publication because the amended complaint

identifies only internal communications among Lakeland Regional Health personnel. The Court agrees. Plaintiff alleges that Dimmick published the memorandum to Lakeland Regional Health personnel involved in dealing with Plaintiff's request for accommodation, the investigation into her contentions, her employment status, and in framing Defendants' legal response to her contentions, and that the memorandum was maintained or used within Lakeland Regional Health's human resources, legal, investigative, or personnel processes. But communications made among corporate executive or managerial employees concerning corporate matters are treated as communications by the corporation to the corporation itself and do not constitute publication to a third party. *See Hullick v. Gibraltar Priv. Bank & Tr.*, 279 So. 3d 809, 812 (Fla. 3d DCA 2019). Plaintiff does not allege that the memorandum was communicated to any nonmanagerial employee or person outside Lakeland Regional Health.

Plaintiff also alleges that Defendants' November 2025 EEOC position statement reproduced and relied upon the same accusations and, "to the extent unprivileged," constituted an additional defamatory publication. This conditional allegation likewise fails to plausibly identify an actionable publication to a third party.

Defendants additionally argue that the alleged internal communications are protected by Florida's qualified common-interest privilege. That privilege applies to communications made by one person having an interest in the subject matter to another person having a corresponding interest. *See Nodar v. Galbreath*, 462 So. 2d 803, 809-10 (Fla. 1984). The basis for the qualified common-interest privilege appear on the face of the amended complaint because the communications alleged here

concerned Plaintiff's employment, accommodation process, investigation, and related personnel decisions, and were allegedly made to Lakeland Regional Health personnel involved in those matters. Plaintiff attempts to overcome the privilege by alleging that Dimmick acted with express malice because he revived a previously closed and unsubstantiated complaint after Plaintiff asserted protected rights and used the allegations to discredit her. But the fact that the prior complaint was closed without findings does not, without more, plausibly establish that Dimmick's primary motive in communicating information concerning that complaint during the accommodation and employment process was to injure Plaintiff. Plaintiff's allegations of malice are therefore insufficient to overcome the qualified privilege.

The Court previously identified deficiencies with Plaintiff's defamation claim and afforded her an opportunity to amend. Despite that opportunity, the amended complaint still fails to plausibly allege publication to a third party and fails to plead facts sufficient to overcome the applicable qualified privilege. The Court declines to give further leave to amend. Count X is dismissed with prejudice, without leave to amend.

Negligent Hiring, Retention, and Supervision (Count XI)

Defendants argue that Count XI constitutes an impermissible shotgun pleading because Plaintiff combines claims for negligent hiring, negligent retention, and negligent supervision within a single count. The Court agrees. Although these theories are related, they constitute distinct causes of action involving different factual inquiries, including what the employer knew or should have known and when the employer acquired that knowledge. Here, Plaintiff combines all three theories in a

single count and relies collectively on conduct occurring both before and after Dimmick's hiring without identifying which allegations support each theory. Indeed, Plaintiff ultimately alleges only that Lakeland Regional Health's negligent hiring, retention, and supervision collectively caused her alleged injuries. Count XI therefore fails to provide adequate notice of the factual basis supporting each theory and constitutes an impermissible shotgun pleading.

Count XI also presents substantive pleading deficiencies. A claim for negligent hiring, retention, or supervision requires the commission of a common law tort by the employee alleged to have been negligently hired, retained, or supervised. *See Scelta v. Delicatessen Support Servs., Inc.*, 57 F. Supp. 2d 1327, 1348 (M.D. Fla. 1999). As pleaded, Plaintiff appears to identify Dimmick's alleged defamation as the underlying tort, alleging that Lakeland Regional Health's negligence caused or contributed to "the publication and institutional use of the defamatory accusations." But the Court has dismissed Plaintiff's defamation claim for the reasons discussed above. Plaintiff does not clearly identify another actionable common-law tort committed by Dimmick that would support these negligence theories. Accordingly, these negligence counts fail to state a claim.

Plaintiff was previously afforded an opportunity to cure the shotgun-pleading deficiencies identified by the Court and failed to do so as to Count XI. The Court declines to give further leave to amend. Count XI is dismissed with prejudice, without leave to amend.

**Warning to Pro Se Litigant**

**The Court notes that even *pro se* plaintiffs must conform with procedural rules, including the Federal Rules of Civil Procedure and the Local Rules of the Middle District of Florida. Litigation - particularly in federal court - is difficult, and Plaintiff should consider hiring an attorney. If she is unable to afford counsel, she should consider the resources available to *pro se* litigants, including the Legal Information Program operated by the Tampa Bay Chapter of the Federal Bar Association, and the Middle District of Florida's guide to assist *pro se* litigants proceeding in federal court, which is located on the Court's website.**

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. Defendants' "Motion to Dismiss Amended Complaint with Prejudice" (Doc. 33) is **GRANTED IN PART** and **DENIED IN PART**, as set forth herein.
2. Plaintiff is directed to file a second amended complaint on or before September 4, 2026. Even if Plaintiff does not intend to replead any dismissed claim, Plaintiff shall file a second amended complaint omitting the dismissed claims and identifying the claims that remain so that there is a single operative pleading. Failure to do so will result in this Order becoming a final judgment.
3. The second amended complaint shall not include Count IX, X, or XI, which

have been dismissed with prejudice and without leave to amend, meaning that Plaintiff may not refile these claims.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 20th day of August, 2026.

TOM BARBER
UNITED STATES DISTRICT JUDGE